<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBRA DEVITO,<br><br>*Plaintiff*,<br><br>v.<br><br>PANEVINO RISTORANTE, PATINA RESTAURANT GROUP, DELAWARE NORTH, JOSE VERA, JOSE QUINTANA, ABC COMPANY 1-10 and JOHN DOES 1-10,<br><br>*Defendants*. | Civil No.: 23-cv-743 (KSH) (MAH)<br><br><br><u>**OPINION**</u> |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.    Introduction**

This matter comes before the Court on the motion (D.E. 13) of plaintiff Debra DeVito to remand this action brought against her former employer, Panevino, LLC, incorrectly pled as Panevino Ristorante ("Panevino"), two known parent companies, Patina Restaurant Group, LLC, incorrectly pled as Patina Restaurant Group ("Patina") and Delaware North Companies, Inc., incorrectly pled as Delaware North ("Delaware North"), two former managers, Jose Vera and Jose Quintana, other unknown entities ABC Company 1-10, and other individual wrongdoers John Does 1-10.

DeVito has sued for employment discrimination and hostile work environment under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., and the common law torts of invasion of privacy, unlawful surveillance, assault, battery, intentional infliction of emotional distress, and aiding and abetting.

DeVito's original complaint, filed in New Jersey state court, did not name Vera, Quintana, or any other individual wrongdoers as defendants. It only named Panevino, Patina, and Delaware

1

North (the "entity defendants") along with ABC Company 1-10 and John Does 1-10. Because the three named entity defendants were Delaware and New York citizens, they removed to this Court based on complete diversity. Shortly after removal, DeVito amended her complaint as of right to add Vera and Quintana, both citizens of New Jersey, as defendants, asserting all claims against them. She then filed a motion to remand for lack of subject matter jurisdiction. Defendants opposed the motion and filed a cross-motion to dismiss the aiding and abetting claims against Vera and Quintana.

## II. Background

The operative First Amended Complaint (D.E. 6) alleges as follows.[1] Debra DeVito began working as a bartender at Panevino Ristorante in Livingston, New Jersey in August 2012. After ten years of employment, she "was compelled to give her notice of separation" in June 2022 because the "intolerable work environment . . . became too much for [her] to endure." (D.E. 6, First Am. Compl., ¶¶ 10, 38.)

DeVito alleges that while she worked at Panevino she was instructed to conceal the restaurant's cockroach infestation from patrons. (*Id.* ¶¶ 31-35.) She claims cockroaches regularly crawled on and around the bar area of the restaurant where she worked. (*Id.* ¶ 32.) She alleges that in the storage room "cockroaches were everywhere" and would crawl on her whenever she went in there to retrieve water bottles as part of her job duties. (*Id.* ¶ 34.) DeVito claims that when she complained of the cockroach infestation to head chef Jose Quintana, he told her to "shake out

---

[1] For factual background, the Court cites to the allegations made in the First Amended Complaint rather than the original complaint (D.E. 1, Ex. A) because DeVito properly amended her complaint as of right under Fed. R. Civ. P. 15(a)(1)(B) after removal. *See Avenatti v. Fox News Network LLC*, 2021 WL 3603035, at *1 (D. Del. Aug. 13, 2021), *aff'd*, 41 F.4th 125 (3d Cir. 2022) (citing to the complaint as amended after removal for factual background).

the containers and pizza boxes before using them because the roaches like to hide in them." (*Id.* ¶ 35.)

Additionally, DeVito alleges that around May 2022 a co-worker informed her that Panevino's all-male kitchen crew members, including Quintana and kitchen manager Jose Vera, were spying on and videotaping female employees using the second-floor employee bathroom through a gap in the door. (*Id.* ¶¶ 10, 13.) The male workers were then passing around the photos and videos and storing them on their cell phones. (*Id.* ¶ 17.)

Shortly afterwards a former female co-worker told DeVito that this behavior had been ongoing for over 15 years. (*Id.* ¶¶ 11, 12.) She shared with DeVito that when she used the employee bathroom, she placed a garbage can by the door to prevent the spying and videotaping. (*Id.* ¶ 12.) When DeVito complained to Quintana about the kitchen crew's spying, he denied it. (*Id.* ¶ 39.)

DeVito alleges that co-workers informed her in May 2022 that the restaurant fired Vera because of his spying behavior. (*Id.* ¶ 19.) DeVito asserts that Panevino did not fix the gap in the employee bathroom door or inform the staff about the spying. (*Id.* ¶¶ 20, 22, 26, 28, 30.) Even after Vera's termination, and with Quintana's alleged participation and permission, kitchen staff members continued to spy on female employees. (*Id.* ¶¶ 23, 24.) DeVito gave Panevino her notice of separation the following month on June 14, 2022. (*Id.* ¶ 38.)

On January 10, 2023, DeVito filed an eight-count complaint against the entity defendants, ABC Company 1-10, and John Does 1-10 in New Jersey Superior Court, Morris County, asserting claims for harassment and hostile work environment in violation of NJLAD, along with the common law torts of invasion of privacy, unlawful surveillance, gender discrimination, assault, battery, intentional infliction of emotional distress, and aiding and abetting. (D.E. 1, Ex. A,

Original Compl.)  The complaint defined John Does 1-10 as "individuals whose names are not known but who participated in spying on females at the restaurant and/or were in management positions and acted with reckless disregard as to the conduct against females . . . ."  (*Id.* ¶ 6.) Although the complaint did not name Vera or Quintana as defendants, it discussed the participation of the "male kitchen crew" and "at least two male managers" in the spying and distribution of the videos, and mentioned Vera by name.  (*Id.* ¶¶ 8, 11, 17.)

On February 8, 2023, the entity defendants removed the action to this Court based on diversity.  (D.E. 1.)  At the time of removal, DeVito was a citizen of New Jersey, while the entity defendants were citizens of Delaware and New York.[2]  (D.E. 30, 31.)

Nine days later, on February 17, 2023, DeVito amended her complaint[3] to add individual wrongdoers Vera and Quintana, who were both in management positions and both citizens of New Jersey.  The First Amended Complaint contained the same factual allegations and the same eight counts as the original complaint, with Vera and Quintana now specified as the "two male managers" engaging in and permitting the spying.  (*Id.* ¶¶ 13, 19, 24.)  It also added the factual allegation that DeVito complained directly to Quintana about the spying and the cockroach infestation.  (*Id.* ¶¶ 35, 39.)

On February 27, 2023, ten days after amending the complaint, DeVito's attorney emailed defense counsel seeking consent to remand the matter back to New Jersey state court for lack of

---

[2] The Court rejects DeVito's attempt to suggest that Panevino, Patina, and Delaware North are citizens of New Jersey because the restaurant operates in New Jersey.  A corporation's citizenship is determined by its state of incorporation and its principal place of business, and an LLC's citizenship is determined by the citizenship of its members—not by its activities or principal place of business.  *Johnson v. Smithkline Beecham Corp.*, 724 F.3d 337, 347, 350 (3d Cir. 2013). Delaware North is a corporation organized in Delaware with its principal place of business in New York. (D.E. 31.)  Panevino and Patina are LLCs whose members are citizens of Delaware or New York.  (D.E. 30, 31.)

[3] The amendment was permitted as of right under Fed. R. Civ. P. 15(a)(1)(B).

4

diversity jurisdiction both because Vera and Quintana were citizens of New Jersey and because she anticipated adding more individually named New Jersey defendants as discovery progressed. (D.E. 14, Ex. E.)  Defense counsel did not respond and on March 9, 2023, DeVito filed the motion to remand now before this Court.  (D.E. 13.)

Panevino, Patina, Delaware North, and Quintana answered the First Amended Complaint and opposed the motion for remand, arguing that DeVito fraudulently joined Vera and Quintana in order to destroy diversity jurisdiction.  (D.E. 16, 20.)  Shortly after that they filed a cross-motion to dismiss the individual defendants, arguing that DeVito was unable to establish a *prima facie* case of aiding and abetting against them under NJLAD.  (D.E. 22.)[4]  DeVito replied in support of her motion to remand and in opposition to defendants' cross-motion to dismiss.  (D.E. 27.)  After reviewing the submissions, the Court directed the parties to submit supplemental briefing to address whether Vera and Quintana are indispensable parties under Fed. R. Civ. P. 19; and how the factors from *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987) apply where non-diverse defendants have been added after proper removal to this Court.  (D.E. 36-41.)

### III. DeVito's Motion to Remand

DeVito's attorney has submitted a sworn certification (D.E. 13-2) representing that "[t]he Complaint inadvertently did not name individuals Jose Vera and/or Jose Quintana as named defendants."  DeVito argues that Vera and Quintana, the individuals who engaged in the intentional, wrongful, and harmful conduct that is the basis of her various tort claims, are "indispensable parties" who may not be dropped from the case.  She stresses that they are "directly responsible for the violations of law"; that whether they acted intentionally or recklessly is "crucial in establishing liability and damages"; and that their inclusion "is essential for enforcing

---

[4] Defendant Vera later joined in the opposition and cross-motion to dismiss.  (D.E. 33.)

5

accountability and deterrence." Vera and Quintana are the only two individual wrongdoers that DeVito currently knows, and more bad actors will be added to the complaint once their identities come to light in discovery, something that is manifest in the inclusion of John Does 1-10 in the original complaint.

In opposition, defendants claim DeVito has based her claims against Vera and Quintana merely on conjecture and added them "in an effort to manipulate this Court's jurisdiction." Defendants argue that Vera and Quintana are not indispensable parties under Fed. R. Civ. P. 19 because the original named defendants can provide "complete recovery under joint-and-several liability." Factually they claim that at the time she filed the original complaint, DeVito knew of Vera and Quintans's spying, as evidenced by their mention in the body of the complaint.

### A. Standard of Review and Post-Removal Amendment

Generally, after removal, a plaintiff may amend a complaint in one of three ways—as of right, with the opposing party's consent, or with the court's permission. Fed. R. Civ. P. 15(a)(1), (2). In the last instance, should the amendment destroy subject matter jurisdiction, 28 U.S.C. § 1447(e) applies and permits courts either to "deny joinder" or to "permit joinder and remand the action to the State court."

But when the plaintiff amends as of right under Rule 15(a), § 1447(e) is inapplicable, and the Third Circuit's recent instructions in *Avenatti v. Fox News Network LLC*, 41 F.4th 125 (3d Cir. 2022) come into play. "In removal actions predicated on complete diversity, plaintiffs cannot nullify a court's gatekeeping function by adding jurisdictional spoilers as of right under Rule 15(a)." *Avenatti*, 41 F.4th at 134. Instead, the Court has two options: it can use its "on just terms" discretion to "drop" the spoiler under Fed. R. Civ. P. 21, which states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party"; or it can remand to state court

6

under 28 U.S.C. § 1447(c), which instructs that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.* at 130, 135.

A district court's decision, then, is discretionary; it requires context; and it is bounded, according to the *Avenatti* decision, by two "prerequisites": Fed. R. Civ. P. 19's requirement that "indispensable parties may not be dropped" and "Rule 21's own ['on just terms'] requirement that no party be prejudiced." *Id.* at 135. *Avenatti* instructs district courts to exercise their "on just terms" discretion over amendments as of right the same way they exercise their § 1447(e) discretion over proposed amendments—by looking to the factors the Fifth Circuit identified in *Hensgens* as "helpful guideposts." Those factors are (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction"; (2) "whether plaintiff has been dilatory in asking for amendment"; (3) "whether plaintiff will be significantly injured if amendment is not allowed"; and (4) "any other factors bearing on the equities." *Hensgens*, 833 F.2d at 1182. This framework reflects what *Avenatti* initially observed: that "because Rule 21 does not contain explicit standards governing the propriety of joinder or severance—that is, what constitutes 'just terms'—courts sometimes must incorporate standards to be found elsewhere in exercising their Rule 21 discretion." 41 F.4th at 131 (cleaned up).

### B. Analysis

#### 1. Indispensable Party Analysis

To decide whether to exercise its Rule 21 discretion to drop Vera and Quintana, as defendants urge, the Court addresses *Avenatti*'s first "prerequisite": the determination of whether they are "indispensable" parties who cannot be dropped under Rule 19(b). The Third Circuit has characterized indispensable parties as "persons who not only have an interest in the controversy,

7

but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its [final termination] may be wholly inconsistent with equity and good conscience." *Doolin v. Kasin*, 424 F. App'x 106, 110 n.4 (3d Cir. 2011) (cleaned up).  It is this second point—what shape DeVito's lawsuit will be in should the Court exercise discretion as defendants insist—that raises concerns.

In the First Amended Complaint, Vera and Quintana are the only named individual wrongdoers, and the other named defendants are business entities.  The bulk of DeVito's claims are torts based on the conduct of individuals.  DeVito describes both Vera and Quintana as managers who, with other kitchen crew members, spied on female employees using the restroom. DeVito also claims she complained to Quintana about the cockroach infestation and the spying, and that female employees told her the spying had gone on for 15 years.  As DeVito argues in her supplemental papers that to be actionable, she must show that the harms caused by defendants were intentional.  The actions and intentions of Vera and Quintana are therefore central to the case and critical to the finding of liability.[5]  Additionally, in *Avenatti* there were individuals besides the nondiverse defendant, Hunt, named in the action.  The court concluded that Hunt was a dispensable party because the employer, Fox News, "was already in the case and could provide complete recovery under joint-and-several liability" and because "nothing was alleged about [the employee's] role or relationship to Fox News that would make recovery against him alone plausible."  41 F.4th at 135.  Examining the complaint as a whole, the Court is satisfied that

---

[5] Examined thus, defendants' argument that DeVito pleads joint and several liability is not persuasive. *Avenatti* cites to one circuit decision, *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302 (8th Cir. 2009), where the court did uphold dropping individual defendants and leaving only entity defendants as permissible because plaintiff pleaded joint and several liability.  But there the theory of the harm was a *company* policy preventing the plaintiff from access to internal documents, factually distinguishable from what DeVito is pleading here.

dropping Vera and Quintana would "leave the controversy in such a condition that its [final termination] may be wholly inconsistent with equity and good conscience." *Doolin*, 424 F. App'x at 110 n.4 (cleaned up).

### 2. "On Just Terms" Analysis

Although the Court is permitted to end its analysis on finding that Vera and Quintana are indispensable parties, the Court follows *Avenatti*'s guidance that, in exercising its Rule 21 discretion, the Court should "focus[] . . . [its] attention on the most important questions relevant to the issue presented" to "make an informed, rational judgment about whether to retain jurisdiction by dropping [the nondiverse defendant]." 41 F.4th at 131. So the Court moves to the second Rule 21 "prerequisite" and considers whether that Rule would justify keeping Vera and Quintana in the case, even if they were dispensable parties. *Avenatti* sets forth the framework for the Court's "on just terms" analysis by directing that it use the Fifth Circuit's *Hensgens* factors as "helpful guideposts." *Id.*

#### a. *Hensgens* Factors

##### i. *Purpose of Amendment*

The first *Hensgens* factor requires the Court to determine whether DeVito's purpose in adding Vera and Quintana was to defeat federal jurisdiction.

According to plaintiff's counsel, Vera and Quintana were "inadvertently" not included in the original complaint and added later to bring claims against all wrongdoers in one suit. Counsel points out this motive is evidenced by the inclusion of John Does 1-10 in the original complaint.

Defendants argue that DeVito knew the identity of Vera and Quintana when she filed and that the First Amended Complaint failed to add additional facts about them. This argument overlooks additional facts in the First Amended Complaint, for example that Quintana instructed

9

DeVito to "shake out" cockroaches from pizza boxes (¶ 35), that both Vera and Quintana engaged in and permitted the spying and videotaping of female employees through a gap in the bathroom door (¶¶ 10, 13, 19, 24), and that, in response to DeVito's complaints, Quintana denied that any spying was occurring (¶ 39).

Closely reading both complaints, the Court is satisfied that the omission of these alleged wrongdoers as named defendants—whose conduct is specified and unique to their position in the restaurant—was inadvertent.  In the original complaint, DeVito refers to Vera by name (¶¶ 17, 21) and Quintana by reference to "male managers" (¶ 11).  DeVito had reason to add Vera and Quintana in order to prosecute her claims against the individual wrongdoers in one suit.  The inclusion of the John Does 1-10 defendants illustrated counsel's intention to bring her complaint against the individual wrongdoers in this action, and counsel emailed defendants' attorney after filing the First Amended Complaint to explain that she "anticipate[d] adding several more individually named defendants as their names c[a]me to light through discovery" in an attempt to resolve the remand issue amicably (D.E. 14, Ex. E).  Satisfied that the purpose prong of *Hensgens* is met, the Court addresses the other factors.

### ii.  Delay

Under the second *Hensgens* factor, the Court must determine whether DeVito was dilatory in amending her complaint.

Defendants argue that DeVito was dilatory in that she waited 52 days after filing her original complaint, relying on *Salamone v. Carter's Retail, Inc.*, 2010 WL 762192 (D.N.J. Mar. 5, 2010) (Brown, J.).  But in that case, removal occurred 41 days after the complaint was filed, and the plaintiff waited another 37 days after that to seek leave to amend.  Here, defendants removed 29 days after suit was filed, and DeVito was still within the time frame to amend as of right when

she amended nine days later. *See Confessore v. AGCO Corp.*, 2015 WL 4430472, at *6 (D.N.J. July 20, 2015) (Wolfson, J.) (concluding that plaintiff was not dilatory in seeking to amend to add a non-diverse defendant three weeks after removal because the case was "still in its infancy"); *Parker v. Amazon Logistics, Inc.*, 2023 WL 4141037, at *6-7 (E.D. Pa. June 22, 2023) (concluding that filing a motion to amend less than one month after removal "[did] not suggest undue delay"). Additionally, discovery had not yet begun. The Court is satisfied that DeVito was not dilatory.

### iii. *Prejudice to Plaintiff*

The Court next considers whether DeVito will be "significantly injured" if Vera and Quintana are dropped. DeVito argues that she would be prejudiced if Vera and Quintana were dropped because she would have to file a separate state court action against them. Common sense dictates that requiring DeVito to proceed with two separate actions, one against the entity defendants and another against the individual defendants, would not only cause plaintiff economic hardship but incur the genuine risk of conflicting findings and rulings. Vera and Quintana are the only named individual wrongdoers, and as discussed above, dropping them would hinder DeVito's ability to establish liability.

### iv. *Other Equities*

The fourth and final *Hensgens* factor asks whether there are "any other factors bearing on the equities." Rather than presenting valid equitable considerations for their position, defendants' briefing appears to ask the Court to weigh in on the merits of their motion to dismiss by arguing that DeVito has not stated cognizable claims for aiding and abetting against Vera and Quintana. But the Court must first determine if it has subject matter jurisdiction before it can entertain merits arguments.

The Court has not been presented with facts that would shift the equities in the direction of defendants' position, and concludes overall that the inclusion of Vera and Quintana as defendants in the First Amended Complaint is a permissible amendment under the *Hensgens* analysis notwithstanding its effect on jurisdiction.

### b.  Fraudulent Joinder Doctrine

In *Avenatti*, the Third Circuit went into some detail about the policing authority of the district court in circumstances where the presence of new parties "would unravel vested jurisdiction." 41 F.4th 127-28.  Recognizing that "fraudulent joinder principles might help inform the court's remand decision," the *Avanatti* decision is nonetheless very specific that the fraudulent joinder doctrine has no direct application where the nondiverse party was added after the case had already arrived in federal court. *Id*. at 133.  The Third Circuit held that the district court properly made its Rule 21 analysis applying the *Hensgens* factors without considering fraudulent joinder principles, and this Court has done the same.

As a practical matter, however, under fraudulent joinder principles the defendants have failed to meet their heavy burden of persuasion.  The Court may only dismiss a non-diverse defendant under the fraudulent joinder doctrine when there is "no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (cleaned up).  Plaintiff's mere failure to state a claim under the motion to dismiss standard is not enough; the claim against the non-diverse defendant must be "so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852-54 (3d Cir. 1992) (finding no

fraudulent joinder where a state court "might hold" that plaintiff's claims "can survive a motion to dismiss, . . . even if [they] ultimately may not withstand" dismissal).

Contrary to defendants' arguments, the First Amended Complaint sets forth facts that go beyond allegations made merely "on information and belief." DeVito alleges that she learned from two employees that for 15 years staff members—including Vera and Quintana—engaged in and permitted others to engage in the spying and videotaping of female employees. (First Am. Compl., ¶¶ 10-13.) She asserts that the videos were stored on their phones and circulated. (*Id.* ¶ 17.) Further, the complaint alleges that Vera was fired for this exact activity. (*Id.* ¶ 19.) DeVito asserts she personally complained to Quintana about the spying to no avail. (*Id.* ¶ 39.) The Court also recognizes that DeVito has not only asserted claims based on the spying; she has also brought claims based on the cockroach infestation, alleging she complained directly to Quintana about it, again to no avail. (*Id.* ¶ 35.) The claims against Vera and Quintana survive a fraudulent joinder analysis as not "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 853.

## IV.  Defendants' Cross-Motion to Dismiss

Defendants have cross-moved for dismissal of the aiding and abetting claims against Vera and Quintana in the First Amended Complaint for failure to state a claim upon which relief can be granted. The Court has ruled that this complaint, amended as of right to add two non-diverse defendants, withstands defendants' arguments that the addition is fraudulent and/or that these defendants may and should be dropped under Rule 21. That decision requires remand on grounds that this Court does not have diversity jurisdiction, which was the basis for the removal to federal court. The Court therefore does not have authority to rule on the cross-motion's merits.

## V. Conclusion

DeVito's motion to remand is granted, and defendants' motion to dismiss is administratively terminated based on the Court's conclusion that it is divested of jurisdiction. An appropriate order will enter.

Dated: November 16, 2023            */s/ Katharine S. Hayden*
                                    Katharine S. Hayden, U.S.D.J.